You're Mr. Craig, right? Yes, Your Honor. All right, please proceed. Good morning, Your Honors, and may it please the Court. I'd like to reserve five minutes for rebuttal. PayServices Bank is a de novo banking institution that has received their preliminary approval to establish a state-chartered bank from the state of Idaho. It is subject to the regulatory supervision of the Idaho Department of Finance and the federal laws and regulations regulating the operations of all banks in the United States. It has applied for a master account with the Federal Reserve Bank of San Francisco, which I'll refer to as the Reserve Bank or the San Francisco Fed. The Reserve Bank has refused to give them the account, and that refusal is illegal. The Federal Reserve Act specifically provides that all Federal Reserve Bank services shall be available to non-member depository institutions. Okay. Okay. You know we're going to be talking a lot of sub-details here. The services shall be available, but I think it's slightly different wording. Let me just ask you this. What is your best argument that we'll call it the Reserve Bank is a federal agency? The Federal Reserve Bank is an arm of the Federal Reserve System Board of Governors, which is indisputably a federal agency. Well, it's not indisputable. I want you to tell me why you think it is, because under the standard of whether it has substantial independent authority, that's the standard we're looking at. Based on that standard, what is your best argument that the Reserve Bank is a federal agency? Well, my point, Your Honor, was that the Federal Reserve System Board of Governors is a federal agency. I do understand. That is, but we're talking about the Reserve Bank here, the San Francisco Reserve Bank. Why is that a federal agency? The Federal Reserve Bank exercises independent authority and decision-making power based on the authority to receive applications for master accounts and approve those applications without direct review or oversight from the Federal Reserve System Board of Governors. They have the authority to decide whether an eligible depository institution has access to the U.S. payment system, and they can make that decision without consulting with or approval from the Federal Reserve System. So, if I understand it correctly, the Federal Reserve Board in D.C. sets out certain rules as to what's supposed to happen. The regional banks then can decide what they're going to do, whether they're not going to do it or they will do it. They can reject them, too. Do you agree with that, under the Federal Reserve rules? That language is specifically in there, that they can reject them. No, Your Honor. The Federal Reserve Act, as amended by Congress in December 2022, provides that the master account database must list applications that are approved, rejected, or withdrawn. So, by definition, they contemplate that everybody that applies for a master account doesn't automatically get it, right? It's not a requirement. Every eligible depository institution has a nondiscretionary right to a master account. The issue is that there are certain institutions that don't meet the baseline criteria to obtain a master account. So, your argument is that your particular bank, which admittedly has a lot of approvals from Idaho and so on, is per se eligible. There's no discretion at all on the part of the reserve bank to whether to give it a master account. Is that correct? Yes, Your Honor. The Federal Reserve Act provides and defines depository institution as an institution that is eligible to become an insured bank under the Federal Deposit Act. I understand that it's eligible. But what I'm talking about is I understand you to be saying that your client has a per se right to a master account, that the regional bank, the reserve bank, has no discretion at all on whether to give it a master account. Is that correct? Yes, that's correct, Your Honor. And I think that it's important to establish that that's not the end-all, be-all. There is a nondiscretionary right to a master account because the Federal Reserve Bank services shall be available to nonmember depository institutions, and all of the services provided under 248A are services that require the use of an account. How do we know a bank is statutorily eligible for a master account? Is there some discretion by the bank to make that determination? There must be because the language that Judge Smith quoted said, you know, indicates clearly that they can be approved or rejected. You know, here, what demonstrates that Pay Services was statutorily eligible for a master account? Well, under 12 U.S.C. 461, an institution defined as a depository institution, if it is eligible to make application for insurance under the Federal Deposit Insurance Act. And 461 incorporates, by reference, the Federal Deposit Insurance Act. The Federal Deposit Insurance Act provides that any institution that is in the business of receiving deposits other than trust funds is an eligible institution. So, for example, an institution that only maintains. Counsel, with respect, I know you're aggregating these all together and incorporating by reference, but doesn't 248C show that the Reserve Bank can reject master account requests? Your Honor, I think the issue is that the Reserve Bank is arguing that the word rejected means that they have unfettered discretion and unreviewable discretion to deny. Even if it's not that, certainly reject means that they cannot approve, right? Yes. They cannot approve accounts that have two problems. The first problem is that the applicant is not eligible to maintain a master account. It's not eligible to apply for insurance with the FDIC. It holds funds in trust, such as the status of a bank that acts as a trustee or an executor of an estate, and that's specifically excluded under the FDIC Act. The second problem is if a bank has violated state or federal law, like the Bank Secrecy Act or the Anti-Money Laundering Act, it's barred from engaging in banking business under that law. And the case involving Banco San Juan Internacional against the Federal Reserve Bank of New York establishes that particular principle. They were stripped of their master account by the New York Fed because they were found to have engaged in violations of federal banking statutes. What role does Idaho's approval process, the state bank regulatory scheme, play here? The state banking regulatory scheme allows a state to create a state-chartered bank, which is consistent with the Supreme Court's continued affirmance time and again of the nation's dual banking system, most recently in the unanimous decision of Cantero v. Bank of America last term. Did pay services get approval from Idaho as a state-chartered bank? It received a preliminary approval to establish a state-chartered bank with specific conditions laid out in the preliminary approval, and it applied for a master account in order to complete this process of establishing a state-chartered bank. Is that material or significant here that it has preliminary approval of a state charter? For purposes of your argument, does it matter? I think it matters to the extent that that means it's an eligible institution. It's a non-member state bank, which is considered an eligible type of institution, and it's eligible to make application under the FDIC Act. So its status as having received this preliminary approval or, you know, being in the business of receiving deposits means it's an eligible institution. Can I ask? So the reason why the Fed Bank said that they rejected your bank here is it has unproven risk management framework. Does Idaho analyze the risk management framework when deciding to grant approval to the bank? Yes, it does, Your Honor. So the pay services bank and corporators submitted a large amount of information, including a bank secrecy action, anti-money laundering policy, and its own compliance manuals. So in essence here the Fed Bank just overruled Idaho's decision on whether or not there was an appropriate risk management framework. Exactly. It did. And what do you think, what gives them authority to overrule state banking decisions? They don't have the authority under the Federal Reserve Act to overrule the decisions of state-charted banks, and the guidelines framework that they've developed in August of 2020 essentially redlines state-charted banks out of access to master accounts. It sets up a three-tiered system that appears nowhere in the Federal Reserve Act. So under the authority they claim now, they could just say we're not going to accept any banks from Idaho, right? That's correct. I want to get back to what at least I started with, which is whether the Reserve Bank is a federal agency. I think you said it was.  Arguendo, if it is not, do you agree that the Administrative Procedure Act would not apply? If it's not a federal agency, the Administrative Procedure Act would not apply because it applies only to agency action. Okay, so basically we have to decide whether it's an agency. But if it isn't, then we're not dealing with arbitrary and capricious. If that's the case, and again, I'm not saying it is, but if that's the case, then what's your argument? Mandamus? Well, our argument is the due process clause argument that we raised under the Fifth Amendment to the U.S. Constitution, that there is a right of procedural and substantive due process, both of which have been violated. The procedural due process requires that there be a post-deprivation hearing at a minimum in addition to pre- or post-deprivation hearing procedures. After the San Francisco Fed submitted this one-page denial letter, there was no opportunity for review or a hearing, whether that be an informal hearing or an evidentiary hearing. There was no ability to Counsel, can I ask, why isn't the Fed the proper defendant here? Because I think they provided guidelines to the Fed banks to whether or not to deny these master accounts. So wouldn't there be guidance on how to be in agency action? Isn't this the implementation of the Fed Board of Governors' guidelines on when to deny master accounts, reserve accounts? No, Your Honor. Pay Services Bank submitted this application to the San Francisco Fed more than a week before the guidelines were promulgated. It was submitted around August 10th, and the guidelines were promulgated on August 19th, 2020. So what guidelines did the bank use in deciding to deny the Pay Services account? During the nine-month process of reviewing the application, they claimed that they relied on the guidelines in order to make the determination that Pay Services was not entitled to a master account. Well, doesn't that help you then? If they're implementing the Fed Board of Governors' guidelines, and the Fed Board of Governors is clearly a federal agency, it seems like that's the agency action. I think you've waived that, but anyway. I think that the problem is that the authority to issue master accounts preceded the guidelines. I mean, the Federal Reserve Bank's authority to issue master accounts doesn't stem from the guidelines. They've had this authority under the Federal Reserve Act since the Federal Reserve Act was issued. So your argument is if the bank did not have discretionary authority to deny the reserve account, then you can mandamus them because under the Mandamus Act, if there's a nondiscretionary rule, then we could order them to do that. Yes, exactly, Your Honor. And that gets back to what I understood you to say before, that basically Pay Services has a per se right, that the Reserve Bank has no discretion whatsoever in denying the master account. Is that correct? Yes, Your Honor, and I'd like to explain that because I do understand the hesitancy around limiting the Reserve Bank's authority, particularly as an arm of the government. Yeah, and especially if we have a risky business model coming in. You know, we've had as recently as 2008 a financial crisis in this country. Doesn't the Reserve Bank have some role in the system to make sure that these novel institutions, new business models that inject risk into the system are adequately policed? And for some of them, it may be a rejection of a master account because that can allow risk into the state and national banking system. 1980 was a watershed moment in the history of the Federal Reserve Act. In 1980, Congress passed the Depository Institutions Deregulation and Monetary Control Act, which was designed to bring all banking institutions under the umbrella of the Federal Reserve System and to ensure that they complied with Fed regulations and that they had access to the monetary system. But it doesn't matter how outlandish the business model of the applicant is? No, Your Honor, that's not the case. I thought I heard you say that because you said they're eligible institutions or they're not engaged in illegal conduct. And other than that, no matter what their business model is, they have a nondiscretionary right to a master account. I mean, isn't that your argument? Yes, Your Honor, but I think part of what is part of the problem is that the assumption is that if you get a master account, then it's a free-for-all, and that's not the case. Under 248A, you get a master account. But also under 248C2, it specifies that the master account can be subject to other terms and conditions that apply to member banks. So the Federal Reserve Bank has the authority to place reasonable restrictions on the use of the account, the same restrictions that apply to member banks that pose no risk to the financial system or little risk to the system. Under 342, they also have the authority to essentially limit the deposits that come into the account, and only certain types of deposits are considered lawful. So the Federal Reserve Banks can also have the authority to reject certain types of deposits, and they can set reasonable restrictions on those deposits. Mr. Craig, do you want to say? It's up to you, but you're down to four minutes and so many seconds. You wanted to save five minutes. Do you want to save the rest of your time or do you want to keep going? Yes, Your Honor, I'd like to save five minutes for rebuttal. You don't get five anymore. You get what you got there, but anyway. That's fine. Thank you very much. Thank you. All right. Now let's hear from Mr. Youngwood, please. Thank you, Your Honors. Jonathan Youngwood, Simpson Thatcher for the Federal Reserve Bank of San Francisco. May it please the Court. There are a lot of issues that the district court dealt with, but as we brief, we think there are two key issues. And if the district court got either of them right, nothing else really needs to be considered. Can I just start asking you what I asked your friend over there? Yes. And that is, I'm just going to call it the Reserve Bank. We know it's a longer name. But is the Reserve Bank an agency of the Federal Government? It is not for these purposes, Your Honor. There's quite established law, particularly in this circuit, on that topic, the Lewis case, in a different context. And it's why I say for these purposes, because it is possible to analyze these questions in different purposes. But Lewis case, different facts. But the core analysis there, which Your Honor already referred to, which is substantive government authority, wasn't present there, isn't present here. If you look at the structure between the board and the banks, something very carefully set up and very clearly set up, you can't treat it all as one. You can't treat the 12 banks and the board as the same thing. What role does the fact that the Reserve Bank is privately owned, at least a majority, play in this analysis? I think it would be a stunning thing, frankly, to find that a privately owned institution, where six of the nine directors are elected by the stockholders, that somehow that entity is an agency, particularly for the purposes here. Well, doesn't it answer to the Board of Governors? There are guidelines that the Board of Governors gives, but it has a separate Board of Directors. Well, could it act contrary to what the Board of Governors tells it to do? I would have to think of an example where it could, Your Honor. It's probably unlikely. But the Board of Governors is an agency, for sure. Correct. And then sometimes the Board of Governors can delegate authority to the Federal banks, right? It can. It did not here. But in that situation, you would agree that it is a Federal agency at that point? I'd have to think of what the exact example is, Your Honor. It's not the case here. There's clearly not a delegation of authority. Well, I mean, yeah, but there is clear guidance that the Board can delegate to the banks, correct? Your Honor, I'd have to think. Regulatory authority. I'm not trying to be cute on it. I'd have to think of the exact example because I can't think of a case where it's happened and they've been held to be an agency, that the bank has been. But you agree that there's an explicit, I think, authorization for the Board to delegate authority to the banks? That can happen, Your Honor. So we have a non-Federal agency private corporation, essentially, that has a discretionary gatekeeping rule for access to the national banking system and there's no judicial review of that circumstance? Whatever discretion is exercised, there's no review of decisions that are made in denying master account status? For a variety of reasons. In this case, there is no opportunity for judicial review. That is correct. What if the bank's decision denies master account because they don't like the ethnicity of the bank shareholders or the applicant shareholders? You know where I'm going. There's an impermissible factor and we just have to trust them. No, I don't think that is the answer, Your Honor. I think there's congressional oversight. But no judicial review? Not unless Congress finds a way to give you judicial review. But I think the congressional oversight shouldn't be overlooked. And, in fact, if you look at the 2022 amendments You really are asserting that the bank can discriminate based off of race and there's no judicial review of that? Your Honor, there may be other avenues if somebody discriminates over race but it's not going to be an APA-type review. I mean, there's plenty of, obviously, issues of potential race or gender or other discrimination in the world that involve entities that are not agencies. And there may be ways to get judicial review in contractual relations. Those would be Title VII, Title IX, whatever. Yes, there are other laws Congress passes. So could the bank say, we're not going to approve any bank from Idaho? I think it would have a hard time saying that, Your Honor. But you could, right, under your theory. I don't think it could under the guidelines, under the 2022 guidelines. But under your theory of the law, you could say that and that would get no judicial review. It would not get judicial review under the APA. It would not get judicial review under the claims that are here. But, Your Honor, I do think, and again, I understand the hypothetical and I appreciate you pushing me. It's not anything close to this case. If you look at the database, Your Honors, if you look at the database that Congress set up in 2022, the total number of master accounts denied, rejected in that database is one. It's this bank. If you look beyond just – Wait, I thought, isn't there another case in Wyoming? If you look in total in the database, there are three. A second one is the Wyoming case, the custodial case that will be before the Tenth Circuit. And not recorded in that, there is another one. And wasn't the first rejection in just 2017, right? There's a – I'm sorry, of? Of a master account request. I think it's – it may be 2018, but there are – So it's not a longstanding policy or practice of the bank to reject reserve accounts. It seems to be a very, very rare instance that they are rejected. And novel. At least based on these – this database. And the only other case, Your Honors, because you see it in the briefing, is the Bank of San Juan. That's slightly different because it was a withdrawal. You haven't talked much about the statute. And I am from the Tenth Circuit, and I'm fond of Judge Bachrach's work. Yes. And I guess I'd appreciate your kind of taking him on and explaining why he got it wrong in his concurrence in the –  And with all respect, of course, to him, he was the first to have to address it.  And perhaps that was what you're referring to.  Your Honor, okay. I think in his opinion, he said that this was the first time it's ever happened or – I think that's what he said. I can't tell you for sure if that's factually correct or not. It's not in the record. Let me walk through that. I do want to mention one thing that is not in the record, but it does go to some of the comments my friend said. Based on what we've now been made aware of on October 16th, the Idaho Department of Finance actually told Pay Services that their charter, preliminary or otherwise, had expired and issued a cease-and-desist order on October 18. I understand that's under appeal or on appeal. But the facts, again, not in the record, obviously, because it's after the district court decision. Doesn't that show that they're also doing this type of review that you're doing, that they're looking for risk management issues and whether or not they're causing a risk on you? I don't know, Your Honor, why they took that step at all. But what I will say perhaps to answer that, and I do want to get to Judge Baccarat, Your Honor, there are State systems and there are Federal systems. And I am not saying that the State of Idaho, the State of Wyoming, the State of New York, any State can't charter a bank. What we're saying is if they want access to a master account, which is an important thing, then there are guidelines. We are not stopping them from getting a corresponding bank relationship. So they could take that charter that Idaho gives them, and if another bank, and there are something like 9,000 with master accounts, wants to enter into a contractual arrangement, they can get access. So this is not my client saying we are telling Idaho or any State what to do. It's saying once you've done something, we get to decide under the guidelines.  Whether or not you have to. Whether you direct access. You actually get to be a bank. But you need a master account to operate as a functional bank. No. No, you don't, Your Honor. You can get a corresponding banking relationship. Right. Or you have to go through someone else, another bank. Exactly. So you can't be your own bank. You can't get a master account without being given a master account. Really? That's amazing. So you can't get a master account without getting a master account. And you can't get it without one of the banks giving it to you. You would agree you can't operate as an independent bank without a master account. I think I don't agree with that statement, Your Honor. I think you would be an independent bank if you have a corresponding bank relationship. I'm not sure what the word independent means in the sentence. Let me ask you this. As I understand it, your friend said your pay services filed its application with the Reserve Bank just prior to the Federal Reserve Board promulgating guidelines. Is that your understanding as well? So the timeline, Your Honor, that is not incorrect. It's not incorrect? I don't think it's complete. Okay. The series of meetings that pay services had and pleads ranged from April 22 and in terms of phone calls and other things all the way through, frankly, the learning of the denial. The guidelines became effective on August 19, and that is after an application, but it is in the midst of pay services continuing to have communication and supply information. So basically when we speak of an application from pay services, it isn't just the paperwork. There's ongoing conversations and so on, and the guidelines became effective before any final decision was made. Is that correct, Your Honor? That is correct, Your Honor. Okay. So the guidelines from your perspective clearly do apply in this case? We believe they do apply in this case. And, Your Honor, if they didn't apply, then you'd be left with just the statute and the word may, which I think actually is against the argument my counsel friend would want to make. Isn't your argument, though, that the guidelines are purely advisory? There's no mandatory obligation on the bank to follow them, apply them, use them, look out, and whatever. They're purely advisory. They are, I think, drafted in a way that allows discretion for the person who's applying them. Your Honor, I want to make sure I don't forget to go to Fourth Corner. I'm keeping an eye on that.  So, Your Honor, here's — unless there's other questions, I'd go to Fourth Corner now for a moment. All right. Okay. I'm sorry. Can I ask one little preliminary question? Is there any argument that the Mandamus Act does not apply to the Federal Bank, or do you concede that it applies to the bank? I don't see how it would apply, particularly if the — first of all, no, I don't think it applies because I think you've still got to have some aspect of government. It might be a different test.  So there's no officer or employee of the United States or an agency within the Federal Bank? There's a waived argument that they make on the inferior officer related to the president of the bank, but they don't — that argument isn't before you. I also think it's wrong. The president of the bank is not an inferior officer. The — may be an inferior officer, but the argument isn't made. And if he were an inferior officer for these purposes, he — first of all, he's not making the decision. There's no allegation, as opposed to the Custodia case, which is before you, where there were some allegations of involvement. But it also goes down to whether or not it's a ministerial act, a discretionary act. And you have all those other problems.  Okay. On 258a and 342 and Judge Baccarat's analysis of it in that decision, there are a number of problems with it. First, the pure text of the statute, 258a, is clearly directed to the board. If you had any — 248a. I'm sorry. I'm sorry, 248a, yes. If I said 258a, I was wrong. The — you don't have to — if you had any doubt, you can go to the headings. And I know there are arguments in cases that say headings don't control, but I think when you combine the actual text of the statute with the heading, you go to the use of the word all and the fact that all is in one place, all Federal bank services, but it's not about all member — Before you move on, you're saying that this only applies to the board of governors and doesn't apply to the bank? I think what I'm saying is — well, the instruction is to the board of governors. That is clear by the statute. But the argument that counsel has is that 342 is somehow overridden by the changes to 248a, right? And when you look at 342, which, interestingly enough, was amended at the very same time by the Monetary Control Act of 1980 to add in the nonmember, but not to delete the word may. And we know 342 is what goes to the banks. Yeah, but to 248a, you would agree that those mandates apply to the bank. The instruction is to the board. But it says all Federal Reserve bank services. It's about bank services, but the instruction — So you're saying the bank does not have to follow 248a? I think the bank probably does have to follow 248a.  So it applies. Yeah. Because it couldn't discriminate between members and nonmembers, right? The bank couldn't. For services that each are eligible for. Right. Okay. I think that's fair, Your Honor. But if you're talking about the provision where it is, it is very hard to read it as overriding something that was specifically directed to the bank in the word may, particularly if given that they were touched at the same time by Congress. Okay. Your Honor, I'll keep going through. It's all in our briefs. Obviously, the 2022 amendment, if you have — You mentioned the all argument. I don't understand that one. Can you explain that one? Sure. The statute reads, all Federal Reserve Bank services covered by the fee schedule — I'm sorry. Yeah. Yes. All Federal Reserve Bank services covered by the fee schedule shall be available to nonmember depository institutions. It's significant that the all is in one place and not the other. Why? Because the all means all services. The nonmember depository institutions means — without the word all, it doesn't mean that every nonmember depository institution has to have it or that everyone who's applicable, which is, I think, how they're trying to make this read. I don't know if that's true linguistically. I mean, you say all ducks are birds. If you just said ducks are birds, they mean the same thing. I guess I respectfully disagree with you on that.  I don't — You agree that ducks are birds. I do agree with you that ducks are birds. And all ducks are birds. Those two sentences mean the same thing. Not my specialty. I suspect that's correct. But I do think — They mean the same thing. You have to concede that. Respectfully, Your Honor, I don't think so. There could be — if you have 20 species of things that people call ducks, and whatever way scientists, not my field, categorize them, 10 of them would be in the category of birds and 10 of them are in some other category, it would still be true to say ducks are birds. The birds of the flagler flock together?  I don't know. Okay. That's — As well, Your Honor. You know, I'm worried about two things. We've talked about the arbitrary — the potential for arbitrary decision-making here and, you know, exclusionary practices or protectionism, whatever. And then the other aspect is, you know, the statutory claim. And my concern is about the ability of the Federal Reserve System to control risk and avoid injecting undue risk into the system, which certainly cuts in favor of the bank's decision-making process and the guidelines. You know, I hear Mr. Craig saying, well, everybody can get in through the master account door, but that risk can be managed in two ways. One, by state regulators, which apparently might have happened here. And secondly, on the federal side, through the way the banks are allowed to accept or reject deposits and, you know, different types of services that are eligible. And so explain to me why, if we let them in the door, why wouldn't risk management be covered by the, you know, the rest of 248 and that we really — we need a serious gatekeeper for risk purposes at the 342 level? Your Honor, I think the level — first of all, it would be a circular argument. And frankly, if you take them at their word and they get their master account and then the bank doesn't allow a single deposit to be made, I'm not sure what would be accomplished. It just seems to be almost a silly way to read the statute, that you can give them the ticket but not ever invite them to the party. But it would create burden on the banks. You've now got somebody in who your process said shouldn't be in, and now you've got to monitor every single step they do. Rather than just saying, this is not a risk in our discretion, which, again, the data shows is almost never used for a no. In our discretion, they shouldn't be part of it. And perhaps just to answer the question on why can't we just let the states decide, Your Honor, that — again, they have their obligations to their citizens, and the banks and the board have obligations as a whole to the U.S. financial system. How could Pay Services fix its application? You know, could it resubmit an application here? Or is it just — it will always be at the mercy of the bank under your theory, but were they told, here's a way you can fix your application that would get your master account? They have the letter that they have. I'm sure they had many phone calls. I'm sure if they wanted to reapply and had their charter back, they might be able to reapply. And then it would be judged. I mean, can it go on forever? I'm sure sometimes you've had litigants who've come in forever, and sometimes the courts say enough. I'm not sure one is enough. Can I just sort of wind up with this? Assuming arguendo that the bank is a federal agency, your friend suggests that it has acted in an arbitrary and capricious manner. What's your response to that? Your Honor, there's absolutely no record to support that. You have the guidelines. If they're applicable, they're applicable. If they're not, we just go back to the may. You have, as pled by the complaint, a very extensive set of process, two meetings, written submissions, written response. They don't like the result. They say the letter is too short. If you read the letter, it's pretty specific as to what the reasons are. It's not like we deny. There's no — the arbitrary and capricious is a very high standard. And, in fact, if they are an agency and you conclude they have discretion, that itself is almost never reviewable under the APA. And I think — I suggest the district court didn't get deeply into this, but there is law to say that it wouldn't be reviewable at all. In other words, they really — it's where I started, Your Honor, and maybe I'll wrap up with that. They have to be — Judge Patrico has to be wrong on both points. Thank you. Any other questions? Yeah, sorry. Can I ask a question? I do think the strongest textual argument you have is under 48C, you know, where the database says that it must provide rejected argument — rejected master account request. What's your response to your friend's argument that, well, the bank has the authority to reject ineligible nonmembers, that it can determine whether or not you're eligible, but once you're eligible, you don't have additional discretion to reject it for other reasons? So that's what that could be referring to, just rejected bank accounts because they're ineligible. But that doesn't mean that the bank is conferred extra discretionary authority. I think, Your Honor, that would be a reading that pays no account to the word may in the original statute. It pays no — it doesn't harmonize. Well, I mean, the original statute doesn't talk about master accounts. The original statute does not talk about master accounts. 248A doesn't talk about master accounts. I mean, none of them specifically reference that. I agree. The first statute to refer to it is this. But what's wrong with that argument, though, that the rejected in the database could be referring to rejected accounts because they're ineligible nonmember — they're not eligible nonmember banks? I understand the argument, Your Honor. I think what's wrong with it is it limits, in a way Congress did not specify, the board has not specified and no statute has specified, the criteria by which the bank can make the decision. And there's just no — it doesn't say reject for a reason. It doesn't say why. It just says you — it clearly allows that you can reject. And it was, you know, put forth in a time after Fourth Corner when clearly this type of issue would come forward. They were studying it. Yeah. Okay. Do you have any other questions? All right. Thank you for your argument. Mr. Craig, you get to wind up here with 4 minutes and 32 seconds. Thank you very much, Your Honor. The right to a master account, as we explained in the principal brief, is similar to a right of free speech. People have a right to speak freely, but the government can set time, place, and manner restrictions on your speech. Wait a minute. Wait a minute. Are you suggesting we have a First Amendment case here? No, I'm not. I'm simply providing an analogy as to the problem going on here in this case. So the Federal Reserve Act provides that all Federal Reserve Bank services shall be available to nonmember depository institutions. So, counsel, you were mentioning that your theory is that the banks have authority to reject applicants to determine eligibility and whether or not they committed a crime, but then once they've passed that level, they have no other discretion to reject the bank. Is that how you read it? No. No, Your Honor. That's not how I read it. That's not the full explanation of how I read it. I think as a starting point, all eligible nonmember depository institutions have a right to a master account under 248A.  I'm agreeing with you on that. Right. But I think all I'm asking is they have the right to reject eligibility if you're not eligible. That's right. And if you've committed a crime. But once they've determined that you are eligible, then they have no more discretion. Once you have the account, that relationship is governed by the terms of the operating circular of the Federal Reserve Bank and Federal Reserve Board regulations. They are able to set reasonable restrictions on the use of the account that apply to all banks, both member and nonmember banks. They are able to reject deposits that are not in lawful form provided by Section 342. The bank is also subject to, along with the master account, state and federal regulations. Pay Services Bank is subject to all of the regulations provided by Idaho law. It's also subject to the regulations set out by every federal law that applies to banks, including the Bank Secrecy Act. The Banco San Juan is a perfect example. The FBI investigated allegations of money laundering related to the bank and issued a search warrant. What if your client got the master account and then the bank rejected every deposit that was intended to go into the account? So basically, through the back door, accomplishing what they couldn't through the 248 front door. Under 248A.C.2, that wouldn't be permissible unless the basis for the rejection applied to both member and nonmember banks. So if Pay Services Bank submitted the same kind of deposit as a member bank, a restriction that barred all deposits would not be allowed under Section 248A.C.2 because that provision says that the account could be subject to terms and conditions that apply to all member banks. But what if the bank thought that the funds coming in were the result of money laundering? Could they reject a deposit for that reason? If they applied that same standard to member banks and rejected member bank deposits for the same reason, yes, they could do that. But the point of the Monetary Control Act was to end discrimination between member and nonmember banks and to provide equal access to Federal Reserve Bank services to bring all of the banks under the umbrella of the Federal Reserve System, rather than having a certain set of banks, namely here state charter banks, be shut out of the system. At this point, it is possible for the Federal Reserve Bank to reject all applicants from Idaho that are not also subject to another federal regulator, even though the bank is a state charter bank. The guidelines provide this three-tiered system, which is nowhere in the statute, and it says that the banks that are state charter banks not subject to another federal regulator receive, quote, the strictest level of review, and all of those banks have been shut out. And they can't provide an example of a bank that is a state charter bank without a separate federal regulator that has been issued a master account, certainly not by the San Francisco Fed. And there's one example recently by another Federal Reserve Bank in a different part of the country. But here we would submit that the Federal Reserve Bank is covered by the APA, it is a federal agency for purposes of the APA in this case, and that even if it is not, it's subject to mandamus review based on the due process allegations that we have also made. Okay. Let me ask my colleagues whether either has additional questions. Thanks to both counsel for your helpful argument. We appreciate it. The case just argued of Pay Services Bank versus Federal Reserve Bank of San Francisco is submitted, and the court stands adjourned for the day. Thank you, Your Honor.
judges: Tymkovich, SMITH, BUMATAY